# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

PUBLIC SAFETY SPECTRUM ALLIANCE and PUBLIC BROADBAND TECHNOLOGY ASSOCIATION,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petitions for Review of an Order of
the Federal Communications Commission

## STATUTORY ADDENDUM

Abigail A. Slater
  *Assistant Attorney General*

Robert B. Nicholson
Shana M. Wallace
  *Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

D. Adam Candeub
  *General Counsel*

Bradley Craigmyle
  *Deputy General Counsel*

Sarah E. Citrin
  *Deputy Associate General Counsel*

Igor Helman
  *Counsel*

FEDERAL COMMUNICATIONS
  COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

# TABLE OF CONTENTS

47 U.S.C. § 151 ........................................................................... 3

47 U.S.C. § 301 ........................................................................... 3

47 U.S.C. § 303 ........................................................................... 4

  § 303(c) ................................................................................. 4

  § 303(d) ................................................................................. 4

  § 303(f) .................................................................................. 4

  § 303(g) ................................................................................. 5

  § 303(h) ................................................................................. 5

  § 303(l) .................................................................................. 5

  § 303(r) .................................................................................. 8

47 U.S.C. § 305(a) ..................................................................... 13

47 U.S.C. § 309 ......................................................................... 14

  § 309(a) ............................................................................... 14

  § 309(j) ................................................................................ 14

47 U.S.C. § 337(f) ..................................................................... 17

47 U.S.C. § 1401 ....................................................................... 18

47 U.S.C. § 1422 ....................................................................... 18

  § 1422(a) ............................................................................. 18

  § 1422(b) ............................................................................. 18

47 U.S.C. § 1426 ....................................................................... 19

  § 1426(a) ............................................................................. 19

  § 1426(b) ............................................................................. 20

  § 1426(c) ............................................................................. 23

47 U.S.C. § 1433 ....................................................................... 27

47 C.F.R. § 1.3 .................................................................28

47 C.F.R. § 1.925(b) ........................................................28

47 C.F.R. § 2.103(b) ........................................................28

# 47 U.S.C. § 151

## § 151. Purposes of chapter; Federal Communications Commission created

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

# 47 U.S.C. § 301

## § 301. License for radio communication or transmission of energy

It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State,

Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States (except as provided in section 303(t) of this title); or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.

# 47 U.S.C. § 303

## § 303. Powers and duties of Commission

Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall—

**(a)** Classify radio stations;

**(b)** Prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class;

**(c)** Assign bands of frequencies to the various classes of stations, and assign frequencies for each individual station and determine the power which each station shall use and the time during which it may operate;

**(d)** Determine the location of classes of stations or individual stations;

**(e)** Regulate the kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein;

**(f)** Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the

provisions of this chapter: *Provided, however*, That changes in the frequencies, authorized power, or in the times of operation of any station, shall not be made without the consent of the station licensee unless the Commission shall determine that such changes will promote public convenience or interest or will serve public necessity, or the provisions of this chapter will be more fully complied with;

**(g)** Study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest;

**(h)** Have authority to establish areas or zones to be served by any station;

**(i)** Have authority to make special regulations applicable to radio stations engaged in chain broadcasting;

**(j)** Have authority to make general rules and regulations requiring stations to keep such records of programs, transmissions of energy, communications, or signals as it may deem desirable;

**(k)** Have authority to exclude from the requirements of any regulations in whole or in part any radio station upon railroad rolling stock, or to modify such regulations in its discretion;

**(l)**

> **(1)** Have authority to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to persons who are found to be qualified by the Commission and who otherwise are legally eligible for employment in the United States, except that such requirement relating to eligibility for employment in the United States shall not apply in the case of licenses issued by the Commission to (A) persons holding United States pilot certificates; or (B) persons holding foreign aircraft pilot certificates which are valid in the United States, if the foreign government involved has entered into a reciprocal agreement under which such foreign

government does not impose any similar requirement relating to eligibility for employment upon citizens of the United States;

**(2)** Notwithstanding paragraph (1) of this subsection, an individual to whom a radio station is licensed under the provisions of this chapter may be issued an operator's license to operate that station.

**(3)** In addition to amateur operator licenses which the Commission may issue to aliens pursuant to paragraph (2) of this subsection, and notwithstanding section 301 of this title and paragraph (1) of this subsection, the Commission may issue authorizations, under such conditions and terms as it may prescribe, to permit an alien licensed by his government as an amateur radio operator to operate his amateur radio station licensed by his government in the United States, its possessions, and the Commonwealth of Puerto Rico provided there is in effect a multilateral or bilateral agreement, to which the United States and the alien's government are parties, for such operation on a reciprocal basis by United States amateur radio operators. Other provisions of this chapter and of subchapter II of chapter 5, and chapter 7, of Title 5 shall not be applicable to any request or application for or modification, suspension, or cancellation of any such authorization.

**(m)**

**(1)** Have authority to suspend the license of any operator upon proof sufficient to satisfy the Commission that the licensee--

**(A)** has violated, or caused, aided, or abetted the violation of, any provision of any Act, treaty, or convention binding on the United States, which the Commission is authorized to administer, or any regulation made by the Commission under any such Act, treaty, or convention; or

**(B)** has failed to carry out a lawful order of the master or person lawfully in charge of the ship or aircraft on which he is employed; or

**(C)** has willfully damaged or permitted radio apparatus or installations to be damaged; or

**(D)** has transmitted superfluous radio communications or signals or communications containing profane or obscene words, language, or meaning, or has knowingly transmitted--

**(1)** false or deceptive signals or communications, or

**(2)** a call signal or letter which has not been assigned by proper authority to the station he is operating; or

**(E)** has willfully or maliciously interfered with any other radio communications or signals; or

**(F)** has obtained or attempted to obtain, or has assisted another to obtain or attempt to obtain, an operator's license by fraudulent means.

**(2)** No order of suspension of any operator's license shall take effect until fifteen days' notice in writing thereof, stating the cause for the proposed suspension, has been given to the operator licensee who may make written application to the Commission at any time within said fifteen days for a hearing upon such order. The notice to the operator licensee shall not be effective until actually received by him, and from that time he shall have fifteen days in which to mail the said application. In the event that physical conditions prevent mailing of the application at the expiration of the fifteen-day period, the application shall then be mailed as soon as possible thereafter, accompanied by a satisfactory explanation of the delay. Upon receipt by the Commission of such application for hearing, said order of suspension shall be held in abeyance until the conclusion of the hearing which shall be conducted under such rules as the Commission may prescribe. Upon the conclusion of said hearing the Commission may affirm, modify, or revoke said order of suspension.

**(n)** Have authority to inspect all radio installations associated with stations required to be licensed by any Act, or which the Commission by

rule has authorized to operate without a license under section 307(e)(1) of this title, or which are subject to the provisions of any Act, treaty, or convention binding on the United States, to ascertain whether in construction, installation, and operation they conform to the requirements of the rules and regulations of the Commission, the provisions of any Act, the terms of any treaty or convention binding on the United States, and the conditions of the license or other instrument of authorization under which they are constructed, installed, or operated.

**(o)** Have authority to designate call letters of all stations;

**(p)** Have authority to cause to be published such call letters and such other announcements and data as in the judgment of the Commission may be required for the efficient operation of radio stations subject to the jurisdiction of the United States and for the proper enforcement of this chapter;

**(q)** Have authority to require the painting and/or illumination of radio towers if and when in its judgment such towers constitute, or there is a reasonable possibility that they may constitute, a menace to air navigation. The permittee or licensee, and the tower owner in any case in which the owner is not the permittee or licensee, shall maintain the painting and/or illumination of the tower as prescribed by the Commission pursuant to this section. In the event that the tower ceases to be licensed by the Commission for the transmission of radio energy, the owner of the tower shall maintain the prescribed painting and/or illumination of such tower until it is dismantled, and the Commission may require the owner to dismantle and remove the tower when the Administrator of the Federal Aviation Agency determines that there is a reasonable possibility that it may constitute a menace to air navigation.

**(r)** Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this chapter, or any international radio or wire communications treaty or convention, or regulations annexed thereto,

including any treaty or convention insofar as it relates to the use of radio, to which the United States is or may hereafter become a party.

**(s)** Have authority to require that apparatus designed to receive television pictures broadcast simultaneously with sound be capable of adequately receiving all frequencies allocated by the Commission to television broadcasting when such apparatus is shipped in interstate commerce, or is imported from any foreign country into the United States, for sale or resale to the public.

**(t)** Notwithstanding the provisions of section 301(e) of this title, have authority, in any case in which an aircraft registered in the United States is operated (pursuant to a lease, charter, or similar arrangement) by an aircraft operator who is subject to regulation by the government of a foreign nation, to enter into an agreement with such government under which the Commission shall recognize and accept any radio station licenses and radio operator licenses issued by such government with respect to such aircraft.

**(u)** Require that, if technically feasible--

    **(1)** apparatus designed to receive or play back video programming transmitted simultaneously with sound, if such apparatus is manufactured in the United States or imported for use in the United States and uses a picture screen of any size--

    **(A)** be equipped with built-in closed caption decoder circuitry or capability designed to display closed-captioned video programming;

    **(B)** have the capability to decode and make available the transmission and delivery of video description services as required by regulations reinstated and modified pursuant to section 613(f) of this title; and

    **(C)** have the capability to decode and make available emergency information (as that term is defined in section 79.2 of the Commission's regulations (47 CFR 79.2)) in a manner that is accessible to individuals who are blind or visually impaired; and

**(2)** notwithstanding paragraph (1) of this subsection--

**(A)** apparatus described in such paragraph that use a picture screen that is less than 13 inches in size meet the requirements of subparagraph (A), (B), or (C) of such paragraph only if the requirements of such subparagraphs are achievable (as defined in section 617 of this title);

**(B)** any apparatus or class of apparatus that are display-only video monitors with no playback capability are exempt from the requirements of such paragraph; and

**(C)** the Commission shall have the authority, on its own motion or in response to a petition by a manufacturer, to waive the requirements of this subsection for any apparatus or class of apparatus--

> **(i)** primarily designed for activities other than receiving or playing back video programming transmitted simultaneously with sound; or

> **(ii)** for equipment designed for multiple purposes, capable of receiving or playing video programming transmitted simultaneously with sound but whose essential utility is derived from other purposes.

**(v)** Have exclusive jurisdiction to regulate the provision of direct-to-home satellite services. As used in this subsection, the term "direct-to-home satellite services" means the distribution or broadcasting of programming or services by satellite directly to the subscriber's premises without the use of ground receiving or distribution equipment, except at the subscriber's premises or in the uplink process to the satellite.

**(w)** Omitted.

**(x)** Require, in the case of an apparatus designed to receive television signals that are shipped in interstate commerce or manufactured in the United States and that have a picture screen 13 inches or greater in size (measured diagonally), that such apparatus be equipped with a feature designed to enable viewers to block display of all programs with a common rating, except as otherwise permitted by regulations pursuant to section 330(c)(4) of this title.

**(y)** Have authority to allocate electromagnetic spectrum so as to provide flexibility of use, if--

    **(1)** such use is consistent with international agreements to which the United States is a party; and

    **(2)** the Commission finds, after notice and an opportunity for public comment, that--

        **(A)** such an allocation would be in the public interest;

        **(B)** such use would not deter investment in communications services and systems, or technology development; and

        **(C)** such use would not result in harmful interference among users.

**(z)** Require that--

    **(1)** if achievable (as defined in section 617 of this title), apparatus designed to record video programming transmitted simultaneously with sound, if such apparatus is manufactured in the United States or imported for use in the United States, enable the rendering or the pass through of closed captions, video description signals, and emergency information (as that term is defined in section 79.2 of title 47, Code of Federal Regulations) such that viewers are able to activate and de-activate the closed captions and video description as the video programming is played back on a picture screen of any size; and

**(2)** interconnection mechanisms and standards for digital video source devices are available to carry from the source device to the consumer equipment the information necessary to permit or render the display of closed captions and to make encoded video description and emergency information audible.

**(aa)** Require--

**(1)** if achievable (as defined in section 617 of this title) that digital apparatus designed to receive or play back video programming transmitted in digital format simultaneously with sound, including apparatus designed to receive or display video programming transmitted in digital format using Internet protocol, be designed, developed, and fabricated so that control of appropriate built-in apparatus functions are accessible to and usable by individuals who are blind or visually impaired, except that the Commission may not specify the technical standards, protocols, procedures, and other technical requirements for meeting this requirement;

**(2)** that if on-screen text menus or other visual indicators built in to the digital apparatus are used to access the functions of the apparatus described in paragraph (1), such functions shall be accompanied by audio output that is either integrated or peripheral to the apparatus, so that such menus or indicators are accessible to and usable by individuals who are blind or visually impaired in real-time;

**(3)** that for such apparatus equipped with the functions described in paragraphs (1) and (2) built in access to those closed captioning and video description features through a mechanism that is reasonably comparable to a button, key, or icon designated for activating the closed captioning or accessibility features; and

**(4)** that in applying this subsection the term "apparatus" does not include a navigation device, as such term is defined in section 76.1200 of the Commission's rules (47 CFR 76.1200).

**(bb)** Require--

**(1)** if achievable (as defined in section 617 of this title), that the on-screen text menus and guides provided by navigation devices (as such term is defined in section 76.1200 of title 47, Code of Federal Regulations) for the display or selection of multichannel video programming are audibly accessible in real-time upon request by individuals who are blind or visually impaired, except that the Commission may not specify the technical standards, protocols, procedures, and other technical requirements for meeting this requirement;

**(2)** for navigation devices with built-in closed captioning capability, that access to that capability through a mechanism is reasonably comparable to a button, key, or icon designated for activating the closed captioning, or accessibility features; and

**(3)** that, with respect to navigation device features and functions--

**(A)** delivered in software, the requirements set forth in this subsection shall apply to the manufacturer of such software; and

**(B)** delivered in hardware, the requirements set forth in this subsection shall apply to the manufacturer of such hardware.

# 47 U.S.C. § 305

## § 305. Government owned stations

### (a) Frequencies; compliance with regulations; stations on vessels

Radio stations belonging to and operated by the United States shall not be subject to the provisions of sections 301 and 303 of this title. All such Government stations shall use such frequencies as shall be assigned to each or to each class by the President. All such stations, except stations on board naval and other Government vessels while at sea or beyond the limits of the continental United States, when transmitting any radio communication or signal other than a communication or signal

relating to Government business, shall conform to such rules and regulations designed to prevent interference with other radio stations and the rights of others as the Commission may prescribe.

\* \* \*

# 47 U.S.C. § 309

## § 309. Application for license

### (a) Considerations in granting application

Subject to the provisions of this section, the Commission shall determine, in the case of each application filed with it to which section 308 of this title applies, whether the public interest, convenience, and necessity will be served by the granting of such application, and, if the Commission, upon examination of such application and upon consideration of such other matters as the Commission may officially notice, shall find that the public interest, convenience, and necessity would be served by the granting thereof, it shall grant such application.

\* \* \*

### (j) Use of competitive bidding

#### (1) General authority

If, consistent with the obligations described in paragraph (6)(E), mutually exclusive applications are accepted for any initial license or construction permit, then, except as provided in paragraph (2), the Commission shall grant the license or permit to a qualified applicant through a system of competitive bidding that meets the requirements of this subsection.

#### (2) Exemptions

The competitive bidding authority granted by this subsection shall not apply to licenses or construction permits issued by the Commission--

**(A)** for public safety radio services, including private internal radio services used by State and local governments and non-government entities and including emergency road services provided by not-for-profit organizations, that--

> **(i)** are used to protect the safety of life, health, or property; and

> **(ii)** are not made commercially available to the public;

**(B)** for initial licenses or construction permits for digital television service given to existing terrestrial broadcast licensees to replace their analog television service licenses; or

**(C)** for stations described in section 397(6) of this title.

\* \* \*

**(6) Rules of construction**

Nothing in this subsection, or in the use of competitive bidding, shall--

**(A)** alter spectrum allocation criteria and procedures established by the other provisions of this chapter;

**(B)** limit or otherwise affect the requirements of subsection (h) of this section, section 301, 304, 307, 310, or 606 of this title, or any other provision of this chapter (other than subsections (d)(2) and (e) of this section);

**(C)** diminish the authority of the Commission under the other provisions of this chapter to regulate or reclaim spectrum licenses;

**(D)** be construed to convey any rights, including any expectation of renewal of a license, that differ from the rights that apply to other licenses within the same service that were not issued pursuant to this subsection;

**(E)** be construed to relieve the Commission of the obligation in the public interest to continue to use engineering solutions, negotiation, threshold qualifications, service regulations, and other means in order to avoid mutual exclusivity in application and licensing proceedings;

**(F)** be construed to prohibit the Commission from issuing nationwide, regional, or local licenses or permits;

**(G)** be construed to prevent the Commission from awarding licenses to those persons who make significant contributions to the development of a new telecommunications service or technology; or

**(H)** be construed to relieve any applicant for a license or permit of the obligation to pay charges imposed pursuant to section 158 of this title.

\* \* \*

**(11) Termination**

The authority of the Commission to grant a license or permit under this subsection shall expire March 9, 2023, except that, with respect to the electromagnetic spectrum identified under section 1004(a) of the Spectrum Pipeline Act of 2015, such authority shall expire on September 30, 2025, and with respect to the electromagnetic spectrum identified under section 90008(b)(2)(A)(ii) of the Infrastructure Investment and Jobs Act, such authority shall expire on the date that is 7 years after November 15, 2021.

\* \* \*

## § 337. Allocation and assignment of new public safety services licenses and commercial licenses

\* \* \*

**(f) Definitions**

For purposes of this section:

### (1) Public safety services

The term "public safety services" means services--

**(A)** the sole or principal purpose of which is to protect the safety of life, health, or property;

**(B)** that are provided--

> **(i)** by State or local government entities; or

> **(ii)** by nongovernmental organizations that are authorized by a governmental entity whose primary mission is the provision of such services; and

**(C)** that are not made commercially available to the public by the provider.

\* \* \*

# 47 U.S.C. § 1401

## § 1401. Definitions

### * * *

### (21) Nationwide public safety broadband network

The term "nationwide public safety broadband network" means the nationwide, interoperable public safety broadband network described in section 1422 of this title.

# 47 U.S.C. § 1422

## § 1422. Public safety broadband network

### (a) Establishment

The First Responder Network Authority shall ensure the establishment of a nationwide, interoperable public safety broadband network.

### (b) Network components

The nationwide public safety broadband network shall be based on a single, national network architecture that evolves with technological advancements and initially consists of--

**(1)** a core network that--

**(A)** consists of national and regional data centers, and other elements and functions that may be distributed geographically, all of which shall be based on commercial standards; and

**(B)** provides the connectivity between--

**(i)** the radio access network; and

**(ii)** the public Internet or the public switched network, or both; and

**(2)** a radio access network that--

**(A)** consists of all cell site equipment, antennas, and backhaul equipment, based on commercial standards, that are required to enable wireless communications with devices using the public safety broadband spectrum; and

**(B)** shall be developed, constructed, managed, maintained, and operated taking into account the plans developed in the State, local, and tribal planning and implementation grant program under section 1442(a) of this title.

## 47 U.S.C. § 1426

## § 1426. Powers, duties, and responsibilities of the First Responder Network Authority

**(a) General powers**

The First Responder Network Authority shall have the authority to do the following:

**(1)** To exercise, through the actions of its Board, all powers specifically granted by the provisions of this subchapter, and such incidental powers as shall be necessary.

**(2)** To hold such hearings, sit and act at such times and places, take such testimony, and receive such evidence as the First Responder Network Authority considers necessary to carry out its responsibilities and duties.

**(3)** To obtain grants and funds from and make contracts with individuals, private companies, organizations, institutions, and Federal, State, regional, and local agencies.

**(4)** To accept, hold, administer, and utilize gifts, donations, and bequests of property, both real and personal, for the purposes of aiding or facilitating the work of the First Responder Network Authority.

**(5)** To spend funds under paragraph (3) in a manner authorized by the Board, but only for purposes that will advance or enhance public safety communications consistent with this chapter.

**(6)** To take such other actions as the First Responder Network Authority (through the Board) may from time to time determine necessary, appropriate, or advisable to accomplish the purposes of this chapter.

## (b) Duty and responsibility to deploy and operate a nationwide public safety broadband network

### (1) In general

The First Responder Network Authority shall hold the single public safety wireless license granted under section 1421 of this title and take all actions necessary to ensure the building, deployment, and operation of the nationwide public safety broadband network, in consultation with Federal, State, tribal, and local public safety entities, the Director of NIST, the Commission, and the public safety advisory committee established in section 1425(a) of this title, including by, at a minimum--

**(A)** ensuring nationwide standards for use and access of the network;

**(B)** issuing open, transparent, and competitive requests for proposals to private sector entities for the purposes of building, operating, and maintaining the network that use, without materially changing, the minimum technical requirements developed under section 1423 of this title;

**(C)** encouraging that such requests leverage, to the maximum extent economically desirable, existing commercial wireless infrastructure to speed deployment of the network; and

**(D)** managing and overseeing the implementation and execution of contracts or agreements with non-Federal entities to build, operate, and maintain the network.

**(2) Requirements**

In carrying out the duties and responsibilities of this subsection, including issuing requests for proposals, the First Responder Network Authority shall--

**(A)** ensure the safety, security, and resiliency of the network, including requirements for protecting and monitoring the network to protect against cyberattack;

**(B)** promote competition in the equipment market, including devices for public safety communications, by requiring that equipment for use on the network be--

> **(i)** built to open, non-proprietary, commercially available standards;
>
> **(ii)** capable of being used by any public safety entity and by multiple vendors across all public safety broadband networks operating in the 700 MHz band; and
>
> **(iii)** backward-compatible with existing commercial networks to the extent that such capabilities are necessary and technically and economically reasonable;

**(C)** promote integration of the network with public safety answering points or their equivalent; and

**(D)** address special considerations for areas or regions with unique homeland security or national security needs.

**(3) Rural coverage**

In carrying out the duties and responsibilities of this subsection, including issuing requests for proposals, the nationwide, interoperable public safety broadband network, consistent with the license granted under section 1421 of this title, shall require deployment phases with substantial rural coverage milestones as part of each phase of the construction and deployment of the network. To the maximum extent economically desirable, such proposals shall include partnerships with existing commercial mobile providers to utilize cost-effective opportunities to speed deployment in rural areas.

**(4) Execution of authority**

In carrying out the duties and responsibilities of this subsection, the First Responder Network Authority may--

**(A)** obtain grants from and make contracts with individuals, private companies, and Federal, State, regional, and local agencies;

**(B)** hire or accept voluntary services of consultants, experts, advisory boards, and panels to aid the First Responder Network Authority in carrying out such duties and responsibilities;

**(C)** receive payment for use of--

> **(i)** network capacity licensed to the First Responder Network Authority; and

> **(ii)** network infrastructure constructed, owned, or operated by the First Responder Network Authority; and

**(D)** take such other actions as may be necessary to accomplish the purposes set forth in this subsection.

**(c) Other specific duties and responsibilities**

**(1) Establishment of network policies**

In carrying out the requirements under subsection (b), the First Responder Network Authority shall develop--

**(A)** requests for proposals with appropriate--

> **(i)** timetables for construction, including by taking into consideration the time needed to build out to rural areas and the advantages offered through partnerships with existing commercial providers under paragraph (3);

> **(ii)** coverage areas, including coverage in rural and nonurban areas;

> **(iii)** service levels;

> **(iv)** performance criteria; and

> **(v)** other similar matters for the construction and deployment of such network;

**(B)** the technical and operational requirements of the network;

**(C)** practices, procedures, and standards for the management and operation of such network;

**(D)** terms of service for the use of such network, including billing practices; and

**(E)** ongoing compliance review and monitoring of the--

> **(i)** management and operation of such network;

> **(ii)** practices and procedures of the entities operating on and the personnel using such network; and

**(iii)** necessary training needs of network operators and users.

## (2) State and local planning

## (A) Required consultation

In developing requests for proposals and otherwise carrying out its responsibilities under this chapter, the First Responder Network Authority shall consult with regional, State, tribal, and local jurisdictions regarding the distribution and expenditure of any amounts required to carry out the policies established under paragraph (1), including with regard to the--

**(i)** construction of a core network and any radio access network build out;

**(ii)** placement of towers;

**(iii)** coverage areas of the network, whether at the regional, State, tribal, or local level;

**(iv)** adequacy of hardening, security, reliability, and resiliency requirements;

**(v)** assignment of priority to local users;

**(vi)** assignment of priority and selection of entities seeking access to or use of the nationwide public safety interoperable broadband network established under subsection (b); and

**(vii)** training needs of local users.

**(B) Method of consultation**

The consultation required under subparagraph (A) shall occur between the First Responder Network Authority and the single officer or governmental body designated under section 1442(d) of this title.

**(3) Leveraging existing infrastructure**

In carrying out the requirement under subsection (b), the First Responder Network Authority shall enter into agreements to utilize, to the maximum extent economically desirable, existing--

**(A)** commercial or other communications infrastructure; and

**(B)** Federal, State, tribal, or local infrastructure.

**(4) Maintenance and upgrades**

The First Responder Network Authority shall ensure the maintenance, operation, and improvement of the nationwide public safety broadband network, including by ensuring that the First Responder Network Authority updates and revises any policies established under paragraph (1) to take into account new and evolving technologies.

**(5) Roaming agreements**

The First Responder Network Authority shall negotiate and enter into, as it determines appropriate, roaming agreements with commercial network providers to allow the nationwide public safety broadband network to roam onto commercial networks and gain prioritization of public safety communications over such networks in times of an emergency.

**(6) Network infrastructure and device criteria**

The Director of NIST, in consultation with the First Responder Network Authority and the Commission, shall ensure the development of a list of certified devices and components meeting appropriate protocols and standards for public safety entities and commercial vendors to adhere to, if such entities or vendors seek to have access to, use of, or compatibility with the nationwide public safety broadband network.

**(7) Representation before standard setting entities**

The First Responder Network Authority, in consultation with the Director of NIST, the Commission, and the public safety advisory committee established under section 1425(a) of this title, shall represent the interests of public safety users of the nationwide public safety broadband network before any proceeding, negotiation, or other matter in which a standards organization, standards body, standards development organization, or any other recognized standards-setting entity addresses the development of standards relating to interoperability.

**(8) Prohibition on negotiation with foreign governments**

The First Responder Network Authority shall not have the authority to negotiate or enter into any agreements with a foreign government on behalf of the United States.

**\* \* \***

**(e) Network Construction Fund**

**(1) Establishment**

There is established in the Treasury of the United States a fund to be known as the "Network Construction Fund".

**(2) Use of Fund**

Amounts deposited into the Network Construction Fund shall be used by the--

**(A)** First Responder Network Authority to carry out this section, except for administrative expenses; and

**(B)** NTIA to make grants to States under section 1442(e)(3)(C)(iii)(I) of this title.

**(f) Termination of authority**

The authority of the First Responder Network Authority shall terminate on the date that is 15 years after February 22, 2012.

**(g) GAO report**

Not later than 10 years after February 22, 2012, the Comptroller General of the United States shall submit to Congress a report on what action Congress should take regarding the 15-year sunset of authority under subsection (f).

# 47 U.S.C. § 1433

## § 1433. Provision of technical assistance

The Commission may provide technical assistance to the First Responder Network Authority and may take any action necessary to assist the First Responder Network Authority in effectuating its duties and responsibilities under this subchapter.

# 47 C.F.R. § 1.3

## § 1.3 Suspension, amendment, or waiver of rules.

The provisions of this chapter may be suspended, revoked, amended, or waived for good cause shown, in whole or in part, at any time by the Commission, subject to the provisions of the Administrative Procedure Act and the provisions of this chapter. Any provision of the rules may be waived by the Commission on its own motion or on petition if good cause therefor is shown.

# 47 C.F.R. § 1.925

## § 1.925 Waivers.

\* \* \*

(b) Procedure and format for filing waiver requests.

\* \* \*

(3) The Commission may grant a request for waiver if it is shown that:

    (i)    The underlying purpose of the rule(s) would not be served or would be frustrated by application to the instant case, and that a grant of the requested waiver would be in the public interest; or

\* \* \*

# 47 C.F.R. § 2.103

## § 2.103 Federal use of non–Federal frequencies.

\* \* \*

(b) Federal stations may be authorized to use channels in the 769–775 MHz, 799–805 MHz and 4940–4990 MHz public safety bands with non–Federal entities if the Commission finds such use necessary; where:

(1) The stations are used for interoperability or part of a Federal/non–Federal shared or joint-use system;

(2) The Federal entity obtains the approval of the non–Federal (State/local government) licensee(s) or applicant(s) involved;

(3) Federal operation is in accordance with the Commission's Rules governing operation of this band and conforms with any conditions agreed upon by the Commission and NTIA; and

(4) Interoperability, shared or joint-use systems are the subject of a mutual agreement between the Federal and non–Federal entities. This section does not preclude other arrangements or agreements as permitted under part 90 of the rules. See 47 CFR 90.179 and 90.421 of this chapter.