**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 24-1363 (lead), 24-1364, 25-1028, 25-1034

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

PUBLIC SAFETY SPECTRUM ALLIANCE AND PUBLIC
SAFETY BROADBAND TECHNOLOGY ASSOCIATION,

Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,

Respondents,

COALITION FOR EMERGENCY RESPONSE AND CRITICAL
INFRASTRUCTURE AND SAN FRANCISCO BAY AREA RAPID TRANSIT,

Intervenors.

On Petitions For Review Of An Order
Of The Federal Communications Commission

**PAGE PROOF REPLY BRIEF OF PETITIONERS
PUBLIC SAFETY SPECTRUM ALLIANCE AND
PUBLIC SAFETY BROADBAND TECHNOLOGY ASSOCIATION**

Andrew J. Pincus
Carmen N. Longoria-Green
Wajdi C. Mallat
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

*Counsel for Petitioners Public Safety Spectrum Alliance & Public Safety
Broadband Technology Association*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

SUMMARY OF THE ARGUMENT ...................................................................... 4

ARGUMENT .......................................................................................................... 6

I.     PSSA AND PSBTA HAVE STANDING ...................................................... 6

II.    CONTRARY TO CERCI'S ASSERTION, THE COMMISSION HAS STATUTORY AUTHORITY TO MAKE THE 4.9 GHZ BAND AVAILABLE TO FIRSTNET ....................................................................... 9

III.   THE RECORD SUPPORTS THE FCC'S FINDINGS THAT THE 4.9 GHZ BAND IS GROSSLY UNDERUTILIZED ........................................ 11

IV.   THE FCC ARBITRARILY AND CAPRICIOUSLY REFUSED TO ADOPT PSSA'S PROPOSALS ................................................................ 14

    A.    The FCC Should Have Replaced Geographic Licenses With Site-Based Licenses ............................................................................ 15

    B.    The FCC Should Have Made Clear That It Will Require Incumbent Licensees To Surrender Unused Spectrum ...................... 17

CONCLUSION ..................................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

REPLY ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gresham v. Azar*,
    950 F.3d 93 (D.C. Cir. 2020) ............................................................................. 15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*,
    463 U.S. 29 (1983) ............................................................................................... 16

*N.Y. Stock Exch. LLC v. SEC*,
    962 F.3d 541 (D.C. Cir. 2020) ............................................................................. 6

*Nat'l Council for Adoption v. Blinken*,
    4 F.4th 106 (D.C. Cir. 2021) ................................................................................ 8

*Nat'l Lifeline Ass'n v. FCC*,
    983 F.3d 498 (D.C. Cir. 2020) ............................................................................. 6

*Sinclair Wyoming Ref. Co. v. EPA*,
    114 F.4th 693 (D.C. Cir. 2024) ........................................................................... 10

**Statutes**

47 U.S.C. § 1422(a) .......................................................................................... 10, 11

47 U.S.C. § 1422(b) .......................................................................................... 10, 11

47 U.S.C. § 1426(a)(1) ............................................................................................ 11

47 U.S.C. § 1426(a)(6) ............................................................................................ 11

**Other Authorities**

4.9 GHz Band,
    83 Fed. Reg. 20011 (May 7, 2018) ...................................................................... 13

*In re Amend. of Part 90 of the Commission's Rules*,
    Sixth Report and Order and Seventh Further Notice of Proposed
    Rulemaking, 36 FCC Rcd. 1958 (2020) ............................................................... 12

*In re Amend. of Part 90 of the Commission's Rules*,
  Seventh Report and Order and Ninth Further Notice of Proposed
  Rulemaking, 38 FCC Rcd. 704 (2023) ............................................................. 12

*In re Amend. of Part 90 of the Commission's Rules*, No. FCC18-33,
  2018 WL 1452723 (OHMSV Mar. 23, 2018) ..................................................... 12

Press Release, *FCC Adopts New Rules to Increase Use of 4.9 GHz
  Spectrum Band*, 2020 WL 5876789 (OHMSV Sept. 30, 2020) ......................... 10

# GLOSSARY

| | |
|---|---|
| 4.9 GHz Band | 4940-4990 MHz spectrum band |
| APA | Administrative Procedure Act |
| BART | San Francisco Bay Area Rapid Transit District |
| CSSA | California State Sheriffs' Association |
| CERCI | Coalition for Emergency Response and Critical Infrastructure |
| FirstNet | First Responder Network Authority |
| FCC | Federal Communications Commission |
| NSA | National Sheriffs' Association |
| NTIA | National Telecommunications and Information Administration |
| PSBTA | Public Safety Broadband Technology Association |
| PSSA | Public Safety Spectrum Alliance |

## INTRODUCTION

In the Eighth Report and Order (Order), the Federal Communications Commission (FCC or Commission) took necessary and important steps to increase first responders' access to the underutilized 4940-4990 MHz spectrum band (4.9 GHz band). But the Commission failed to adopt two additional measures that would have accelerated use of the band. The Order does not justify the Commission's inaction.

First, the FCC ignored PSSA's comments urging it to convert all geographic licenses into site-based licenses. The record before the Commission made clear that geographic licenses, especially licenses encompassing a public safety agency's entire geographic territory, contribute significantly to the 4.9 GHz band's underutilization—because licensees rarely, if ever, use spectrum across the entire licensed area. Delay in relinquishing unused spectrum will delay the band manager's access to that spectrum via the overlay license, which will delay the availability of that spectrum to first responders via the First Responder Network Authority's (FirstNet) public safety broadband network.

Despite this record evidence, the FCC failed to address PSSA's proposal to replace geographic licenses with site-based licenses. In response, the FCC cites discrete snippets of the Order, but the portions of the Order it invokes do not address

PSSA's proposal. The Commission's failure to explain its inaction was arbitrary and capricious.

Second, the FCC erred by deferring whether to compel licensees to surrender spectrum the agency itself identifies as unused in the data-collection process required by the Order. The record is clear that requiring licensees to relinquish unused spectrum would benefit first responders by making more spectrum available to the band manager for the overlay license, and, thus, to FirstNet. The FCC therefore acted unreasonably in deferring a decision on what to do with unused spectrum. The longer this spectrum lays fallow, the longer the delay before first responders can access the spectrum for life-saving communications. And the more uncertainty there is about whether this spectrum will be surrendered, the harder it is for public safety agencies to make decisions about where to invest their resources. Contrary to CERCI's[1] misrepresentation, PSSA's proposal would not require licensees to surrender unused spectrum before the data-collection process is completed; it only ensures that unused spectrum will eventually be relinquished. It was arbitrary and capricious for the Commission to decline to take this much-needed step.

---

[1] "CERCI" refers to Petitioner/Intervenor-Respondents Coalition for Emergency Response and Critical Infrastructure and San Francisco Bay Area Rapid Transit District, as well as Petitioners National Sheriffs' Association and California State Sheriffs' Association.

CERCI and the Commission advance multiple arguments in defending the Commission's inaction. CERCI, but not the Commission, reprises its claim that the FCC lacked authority to take those actions. But the Spectrum Act's plain text amply supports the FCC's authority to allow the band manager to enter into a sharing agreement in the 4.9 GHz band with FirstNet.

CERCI also questions whether the record supports the conclusion that the 4.9 GHz band is underutilized—and even whether the Commission determined that the band is underutilized. But the Order under review is the product of a decade-long effort by the Commission to improve usage of the 4.9 GHz band, and the record supporting this Order and its predecessors leaves no doubt that the band is severely underutilized.

Finally, contrary to the FCC's and CERCI's contentions, the Commission's failure to take these two steps will cause injury to PSSA's and PSBTA's members, giving them standing to challenge the Order. PSSA's and PSBTA's members are public safety officials who will benefit from access to the 4.9 GHz band via the public safety broadband network. The FCC's failure to replace geographic licenses with site-based licenses will reduce the amount of spectrum that PSSA's and PSBTA's members can access through that network. And deferring the decision on what to do with unused spectrum will deprive PSSA's and PSBTA's members of the certainty they need to plan future deployment in the 4.9 GHz band.

## SUMMARY OF THE ARGUMENT

I.     PSSA and PSBTA have standing to assert their challenge to two discrete aspects of the Order. Their members include public safety officials who regularly use the nationwide public safety broadband network—and who would use the enhanced capabilities of the 4.9 GHz band as soon as it is integrated into FirstNet's nationwide public safety broadband network. The FCC's unexplained failure to replace geographic licenses with site-based licenses means that substantial amounts of spectrum will continue to lay fallow, delaying the benefits PSSA's and PSBTA's members would gain from access to the band. Moreover, the FCC's failure to compel licensees to surrender unused spectrum injects needless uncertainty concerning when and how much spectrum will be available to FirstNet, which will delay PSSA's and PSBTA's members from making the expenditures needed to use these technologies. Declarations from PSSA and PSBTA members explaining these injuries are attached to this brief.

II.     The actions that the Commission should have taken, along with the actions the Commission *did* take, fall comfortably within the Commission's and FirstNet's statutory authority. CERCI contends otherwise, but its arguments all depend on an erroneous reading of the Spectrum Act's initial allocation of spectrum to FirstNet. Nothing in the Spectrum Act limits FirstNet's operations to that spectrum; to the contrary, the Act makes clear that FirstNet's public safety

4

broadband network must incorporate new technologies, which necessarily requires access to the spectrum that effectively enables those technologies.

III.    CERCI also wrongly suggests that there is doubt about the FCC's conclusion that the 4.9 GHz band is underutilized. In multiple orders issued over the course of this years-long proceeding, the FCC repeatedly has found that the 4.9 GHz band is underutilized. And that finding is fully supported by the record before the Commission.

IV.    In light of that finding, the FCC acted arbitrarily and capriciously in two respects. First, contrary to the FCC's assertion, the Order does not explain why the FCC rejected PSSA's proposal to replace geographic licenses with site-based licenses. Nor can that failure be retroactively justified, as CERCI attempts to do. The record shows that geographic licenses contribute to underutilization. The FCC's failure to explain its inaction here was arbitrary and capricious.

Second, the FCC unreasonably deferred its determination regarding spectrum identified as unused in the data-collection process required by the Order. Even though the record pointed to a need for licensees to relinquish unused spectrum to allow public safety entities to better tailor their future operations, the FCC deferred that decision for no discernable reason. CERCI mischaracterizes PSSA's position as seeking to have licensees immediately relinquish unused spectrum. That is incorrect: PSSA merely asked the FCC to make a decision now regarding the disposition of

unused spectrum so that PSSA's members can plan accordingly. And the FCC's refusal to make that decision was unreasonable, because the purpose of the data collection is just to identify *which* spectrum is unused, not *whether* that spectrum should be made available once it is identified.

## ARGUMENT

## I.  PSSA AND PSBTA HAVE STANDING.

The FCC (Br. 46-47) and CERCI (Br. 11) contest PSSA's and PSBTA's standing. They are wrong.

To establish Article III standing, PSSA and PSBTA "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 552 (D.C. Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "An association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507-08 (D.C. Cir. 2020) (quotation marks omitted).

The FCC and CERCI argue that PSSA and PSBTA lack standing because their members purportedly will not suffer an injury in fact due to the Order. That is incorrect.

As CERCI recognizes (Br. 11), PSSA's opening brief states clearly that PSSA's and PSBTA's members include public safety officials who depend on the nationwide public safety broadband network and whose operations will be impacted by the Order. The opening brief explains that "[t]he Order will (i) inject unnecessary delay into the delivery of important services that FirstNet would provide first responders using the 4.9 GHz band; and (ii) deprive Petitioners' members of certainty to plan for the availability of such services." PSSA Opening Br. 28. PSSA and PSBTA stated that "it is essential that FirstNet be able to expeditiously and broadly enhance the nationwide public safety broadband network by facilitating the use of new technologies, such as 5G, utilizing the 4.9 GHz band's favorable propagation characteristics." *Id.* at 36.

PSSA's comments detailed the adverse consequences of delay. As early as 2021, PSSA explained that a more expansive and rapidly rolled out overlay license will "facilitate nationwide network deployment, thereby accelerating the availability of the 4.9 GHz Band for 5G services and reducing equipment costs." PSSA Comment 8, https://perma.cc/5P3U-2PEK. PSSA reiterated that interest in 2023, stating that its proposal would "accelerat[e] the availability of the 4.9 GHz Band for

5G services" for its members "and reduc[e] equipment costs through economies of scale." PSSA Comment 8, https://perma.cc/WL7V-FPTF. Failing to make the unused spectrum available expeditiously would therefore harm PSSA's members: the longer the Commission waits to issue the overlay license, the longer it will be before FirstNet can utilize the unused portions of the 4.9 GHz Band to provide additional services that are vital to PSSA's members.

To the extent there is any doubt over what is clear from the opening brief, PSSA and PSBTA submit the attached declarations from their members concerning the Order's impact on their operations. *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 111 (D.C. Cir. 2021) (allowing parties to submit declarations supporting standing on reply when the parties "reasonably assumed that their standing was self-evident" (quotation marks omitted)).

As the declarations make clear, PSSA's and PSBTA's members include first responders who rely on FirstNet's nationwide public safety broadband network to ensure that they can quickly and effectively respond to public safety emergencies. They will be better able to respond to emergencies if the nationwide public safety broadband network can be enhanced through the use of 4.9 GHz spectrum.

The two aspects of the Order that PSSA and PSBTA challenge harm PSSA's and PSBTA's members' operations. First, as the declarations explain, the Commission's failure to convert all geographic licenses into site-based licenses will

8

reduce the amount of spectrum available for 5G and other high-bandwidth applications through the public safety broadband network. *See* RA.3. That will constrain members' ability to provide life-saving services. Moreover, a piecemeal and delayed transfer of unused spectrum will increase costs for PSSA's and PSBTA's members. *See* RA.3-4. PSSA's and PSBTA's members will be left uncertain over what and how much new equipment they must actually invest in, and will therefore be forced to delay making decisions on which technologies to invest in—which will delay the deployment of equipment utilizing those new technologies.

Put simply, if the Commission waits to require unused spectrum to be surrendered and fails to cancel geographic licenses, the unused spectrum that is subject to any sharing agreement is reduced, and PSSA's and PSBTA's members will be deprived of access to spectrum. PSSA and PSBTA therefore have standing to challenge the Order.

## II. CONTRARY TO CERCI'S ASSERTION, THE COMMISSION HAS STATUTORY AUTHORITY TO MAKE THE 4.9 GHZ BAND AVAILABLE TO FIRSTNET.

The Commission has broad authority to adopt the Band Manager framework. PSSA Opening Br. 29-31, FCC Br. 51-60, PSSA Intervenor Br. 5-10. The Commission also acted well within its expansive authority in allowing the Band Manager to enter into a sharing agreement with FirstNet. PSSA Opening Br. 31-32, FCC Br. 73-74, PSSA Intervenor Br. 10-11. And that same statutory authority allows

9

the FCC to convert geographic licenses into site-based licenses and compel licensees to relinquish unused spectrum.

As in its opening brief, CERCI's intervenor brief hinges on its rewriting of the Spectrum Act. According to CERCI, because the Spectrum Act speaks "*only* of a single license," Br. 7—the 700 MHz band—Congress expressly restricted FirstNet to that band. But CERCI cannot "'narrow a provision's reach by inserting words Congress chose to omit.'" *Sinclair Wyoming Ref. Co. v. EPA*, 114 F.4th 693, 709 (D.C. Cir. 2024) (quoting *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020)). CERCI tries to do just that: "only" appears nowhere in Congress's text allocating spectrum or in Congress's articulation of FirstNet's responsibilities. Without any textual indication that Congress meant the initial allocation to be the "only" allocation spectrum available to FirstNet, CERCI's argument falls apart.

CERCI also suggests that because FirstNet is a "creature of statute," it cannot operate outside of the bounds of the 700 MHz band. Br. 7. But that misreads the Spectrum Act. As CERCI concedes (*id.*), Congress directed that FirstNet "shall ensure the establishment of a nationwide, interoperable public safety broadband network" that "evolves with technological advancements." 47 U.S.C. § 1422(a)-(b). In other words, Congress established an entity that is tasked with developing a nationwide public safety broadband network that does not remain stagnant, but rather adapts as new communications technologies are developed. The fact that

10

FirstNet began its mission with a 700 MHz license does not—without more statutory language—mean that Congress confined its operations only to that band.

Every one of CERCI's assertions about the statutory scheme all depend on this flawed reading of the statute. For instance, CERCI points to language about "all powers specifically granted" to FirstNet "by the provisions of this subchapter." 47 U.S.C. § 1426(a)(1). Likewise, CERCI invokes Congress's authorization of actions that FirstNet "determine[s] necessary, appropriate, or advisable to accomplish the purposes of this chapter." *Id.* § 1426(a)(6).

CERCI asserts (Br. 8) that these provisions refer back to Congress's purported confinement of FirstNet to the 700 MHz band. But the natural reading of these provisions is that they limit FirstNet to building, maintaining, and developing the nationwide public safety broadband network that, Congress directed, should evolve as technology develops. 47 U.S.C. § 1422(a)-(b). The Court accordingly should reject CERCI's crabbed reading of the Spectrum Act, which adds words that appear nowhere in the statute and omits Congress's directive that FirstNet establish a nationwide public safety broadband network that evolves with technological advancements.

## III.  THE RECORD SUPPORTS THE FCC'S FINDINGS THAT THE 4.9 GHZ BAND IS GROSSLY UNDERUTILIZED.

Over nearly a decade of administrative proceedings, the FCC repeatedly has recognized that the 4.9 GHz band is severely underutilized. *See* FCC Br. 18-24;

PSSA Opening Br. 11-17. Indeed, the entire purpose of this years-long proceeding has been to find ways to increase public safety use of the 4.9 GHz band.

CERCI now tries to cast doubt on this fact. Br. 4-7. CERCI first suggests that "the Order made no findings about utilization in the band." *Id.* at 4. But that treats the Order in a vacuum and not as the latest in a series of actions taken by the Commission over a lengthy set of proceedings. In the Seventh Report and Order, for example, the Commission determined that action was needed to "move the band from being underutilized." *In re Amend. of Part 90 of the Commission's Rules*, Seventh Report and Order and Ninth Further Notice of Proposed Rulemaking, 38 FCC Rcd. 704 ¶ 17 (2023); *see also In re Amend. of Part 90 of the Commission's Rules*, Sixth Report and Order and Seventh Further Notice of Proposed Rulemaking, 36 FCC Rcd. 1958 ¶ 35 (2020) (recognizing that "4.9 GHz spectrum has been underutilized"); *In re Amend. of Part 90 of the Commission's Rules*, No. FCC18-33, 2018 WL 1452723, at \*10 (OHMSV Mar. 23, 2018) (seeking to "promot[e] more efficient use of [4.9 GHz] spectrum that has long been underutilized"); Press Release, *FCC Adopts New Rules to Increase Use of 4.9 GHz Spectrum Band*, 2020 WL 5876789, at \*2 (OHMSV Sept. 30, 2020) (quoting report that "[t]he 4.9 GHz band represents a valuable, though currently underutilized, resource" (alteration in original)).

The Order's entire purpose is to build on these efforts to address underutilization. As the first paragraph explains, the Order "take[s] *another* major step towards ensuring that the [4.9 GHz band] is *efficiently and intensely utilized*." Order ¶ 1 (emphases added). It "bolster[s] the coordinated nationwide approach" adopted earlier in the proceeding to "put [the band] to more robust use." *Id.* It does so by "implement[ing] many of the policy determinations made in" earlier orders, *id.* ¶ 19, including the need "to increase utilization" and to "put[ ] unassigned spectrum to use as quickly and efficiently as possible," *id.* ¶ 21; *see also id.* ¶ 24. Commenters explained, as the Commission previously found, these policies were necessary to address "prolonged underutilization of the band in the last 20 years." *Id.* ¶ 22 n.90 (quoting comment); *see also id.* ¶¶ 29, 35 (citing comment "stat[ing] that the '4.9 GHz band is very much underutilized nationwide'").

CERCI questions whether geographic licenses are contributing to the band's underutilization. Br. 5-6. But as PSSA explained (Opening Br. 12-13), the Commission already made that finding in earlier proceedings, concluding that "a lack of available equipment for mobile applications has impeded widespread use of the band by public safety." 4.9 GHz Band, 83 Fed. Reg. 20011, 20012 (May 7, 2018). Put another way, the Commission has observed that equipment needed for mobile deployment is lacking, because manufacturers have little incentive to develop technologies that have little demand. Inevitably, then, licensees have limited access

13

to the types of mobile technologies that allow them to utilize spectrum in the entire geographic area covered by their licenses. Geographic licenses further contribute to underutilization because licensees are given access to spectrum in areas that it almost never will use. CERCI therefore is wrong to question the conclusion that geographic licenses are contributing to the 4.9 GHz band's underutilization.

Likewise, CERCI errs by latching onto the FCC's qualification that requiring licensees to surrender unused spectrum would only "potentially" increase utilization of the 4.9 GHz band. Br. 17 (quoting Order ¶ 59). The FCC did not, as CERCI suggests, "f[ind] that no such conclusion could be reached 'until after the Commission has completed its'" data-collection process. *Id.* (quoting Order ¶ 59). The Commission simply punted on its decision concerning what to do with unused spectrum even though it is obvious that unused spectrum is, by definition, unused. Making unused spectrum available to other public safety entities via the Band Manager framework will inevitably result in more usage of the 4.9 GHz band.

## IV. THE FCC ARBITRARILY AND CAPRICIOUSLY REFUSED TO ADOPT PSSA'S PROPOSALS.

Given the record before it, the Commission acted arbitrarily and capriciously in two discrete, but important respects. First, the Commission declined to take the logical, rational step, based on the record and the Commission's overall policy direction, to replace all geographic licenses with site-based licenses. Second, the Commission deferred a decision on what to do with unused spectrum even though

14

the record showed that such a deferral would undermine public safety. The Court should remand so that the Commission can address these two shortcomings.

### A. The FCC Should Have Replaced Geographic Licenses With Site-Based Licenses.

"Nodding to concerns raised by commenters only to dismiss them in a conclusory manner is not a hallmark of reasoned decisionmaking." *Gresham v. Azar*, 950 F.3d 93, 103 (D.C. Cir. 2020), *vacated and remanded as moot sub nom.*, *Becerra v. Gresham*, 142 S. Ct. 1665 (2022). PSSA urged the Commission to convert all current public safety geographic-area licenses to site-based authorizations. PSSA Br. 35. That is because, as explained, *supra* pp. 11-14, the record before the FCC showed that geographic licenses contribute to underutilization of the 4.9 GHz band—a conclusion the Commission itself reached in prior orders and reinforced with its action here. The Commission acknowledged PSSA's recommendation but then rejected it without explanation. That is quintessentially arbitrary and capricious.

To explain this failure, the FCC cites a few passages in the Order describing the purported benefits of its adopted approach, which would render all licenses usage based. Br. 95-96. But these snippets do not adequately justify the Commission's action.

Converting existing licenses into usage-based licenses is indeed an important step. By itself, though, it is not sufficient. The FCC concluded that geographic licenses contribute to underutilization. The record shows that geographic licenses

will continue to do so until they are eliminated. In light of this, the FCC had to explain how reissuing a geographic license based on usage could ever make sense. It did not do so, making its decision arbitrary and capricious.[2]

CERCI proposes its own rationale, arguing that geographic licenses are necessary to help respond to certain emergencies. Br. 13-14. But arguments by CERCI's lawyers cannot substitute for the absent Commission determination. And, in any event, CERCI cites nothing in the administrative record supporting its assertion that it "would be impractical, if not impossible," to protect existing operations without geographic licenses. *Id.* All CERCI can point to is the Sheriffs' Motion to Stay, which also is a post-hoc rationalization. *Cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983).

CERCI argues that eliminating geographic licenses will harm public safety. Br. 15. But CERCI identifies no example in the record of reliance on such a license, and it does not, and cannot, explain why the Commission should preserve geographic licenses to allow what CERCI terms "ephemeral" use (*id.* at 14) when doing so will necessarily preclude other public safety entities from efficiently operating in the 4.9

---

[2] CERCI identifies one footnote in which the FCC cites a comment stating that some geographic licensing should persist. CERCI Intervenor Br. 13 (citing Order ¶ 37 n.232). But that comment merely suggested that "[f]urther consideration is warranted with regard to retaining some element of geographic area licensing." APCO Apr. 14, 2023 Comment 19-20, https://perma.cc/LU9C-TT8X. The FCC did not engage in further consideration, so it acted arbitrarily and capriciously by disregarding PSSA's recommendation without any support in the record.

GHz band. And since some geographic licenses cover entire States, Order ¶ 5, the preservation of these licenses will interfere with other public safety entities' operations in large geographic areas, as well as make less spectrum available for the overlay license. The FCC at the very least had to explain why it made this lopsided tradeoff.

### B. The FCC Should Have Made Clear That It Will Require Incumbent Licensees To Surrender Unused Spectrum.

On the record before it, the Commission reached the logical, well-supported conclusion that requiring licensees to surrender unused spectrum would increase utilization of the band. PSSA therefore urged the Commission to make clear that it would require licensees to surrender any unused spectrum once that spectrum had been identified. But the Commission deferred that determination until after it completed the data-collection process, even though the only possible conclusion based on the record and the Commission's policy choices is that unused spectrum must be surrendered. *See* PSSA Opening Br. 36-39.

CERCI tries to recast PSSA's position. It argues (Br. 18) that PSSA wants licensees to surrender unused spectrum before the data-collection process is completed. That is wrong. As PSSA made clear in its opening brief (at 37-38), it was arbitrary and capricious for the Commission to defer its decision on what to do with unused spectrum. PSSA is not, as CERCI suggests, advocating that the Commission

should require licensees to surrender unused spectrum before completion of the data-collection process.

The FCC's defense of its improper deferral fares no better. The FCC contends that it was appropriate to defer consideration until after it completed its data-collection process to "potentially pinpoint 'unused channels within areas covered by certain geographic licenses.'" Br. 97 (quoting Order ¶ 59). That is not responsive. While the data-collection process will identify unused spectrum, the FCC did not need to know what spectrum is unused to conclude in the Order that licensees must give up unused spectrum as soon as the FCC completes the data-collection process.

In addition, contrary to CERCI's suggestion, Br. 19-20, the FCC's deferral of its decision on what to do with unused spectrum will harm public safety. The record before the FCC confirms that, PSSA Opening Br. 38-39, but the FCC nonetheless failed to take the final step, leaving first responders in limbo. Until the Commission decides whether or not licensees must give up unused spectrum, first responders who rely on the nationwide public safety broadband network will not have certainty about how to invest in equipment that can use that spectrum. To be sure, just how much unused spectrum exists will not be finalized until after the data-collection process is completed, but first responders need to know now that unused spectrum will quickly be incorporated into the nationwide public safety broadband network.

Even assuming the FCC ultimately does compel licensees to relinquish unused spectrum, the delay will complicate any integration of that spectrum into the nationwide public safety broadband network and thus first responders' access to that spectrum. Deferral therefore will delay when first responders can avail themselves of life-saving 5G and other advanced applications that can be delivered in the 4.9 GHz band, which will reduce their ability to respond to emergencies.

Nor will requiring licensees to surrender unused spectrum harm the public interest. CERCI Intervenor Br. 19-20. For starters, requiring licensees to surrender unused spectrum will not interfere with licensees' existing operations because, by definition, that spectrum is not being used.

CERCI also raises concerns that requiring licensees to surrender unused spectrum could interfere with plans for future operations. Br. 19. But it makes no sense for the default to be that licensees can sit on vast amounts of unused spectrum because they may one day expand their operations to make use of that spectrum—that is the very problem that the FCC set out to solve.[3]

Ultimately, CERCI gets it right when it concedes that "[a]ccepting PSSA's proposal . . . would not necessarily amount to anything more than a decision *in principle* that unused spectrum should be surrendered at a later date." CERCI

---

[3] Moreover, the FCC accounted for this concern by allowing licensees to obtain a waiver if they need to expand operations. Order ¶ 54.

Intervenor Br. 18. The Commission's decision on what to do "in principle" with unused spectrum is critical for PSSA's members. Deferring the decision will inhibit first responders' ability to understand how much spectrum could be available to the nationwide public safety broadband network and delay first responders' ability to use that spectrum.

The Commission had all that it needed to decide what to do with unused spectrum, and instead elected to punt that decision. That was arbitrary and capricious.

## CONCLUSION

The Court should remand the Order for further proceedings with respect to whether to replace incumbent geographic licenses with site-based licenses and compel incumbent licensees to surrender unused spectrum.

*/s/ Andrew J. Pincus*
Andrew J. Pincus
Carmen N. Longoria-Green
Wajdi C. Mallat
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

*Counsel for Petitioners Public Safety Spectrum Alliance & Public Safety Broadband Technology Association*

Dated: September 15, 2025

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in the Court's Order, *see* Order, *Public Safety Spectrum Alliance v. FCC*, No. 24-1363 (D.C. Cir. May 6, 2025), Doc. No. 2114559, because it contains 4,497 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f).

This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirement of Rule 32(a)(6) because it was prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point type.

*/s/ Andrew J. Pincus*
Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

*Counsel for Petitioners Public Safety Spectrum Alliance & Public Safety Broadband Technology Association*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system, which will serve all counsel of record.

*/s/ Andrew J. Pincus*
Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

*Counsel for Petitioners Public Safety Spectrum Alliance & Public Safety Broadband Technology Association*

**REPLY**
**ADDENDUM**

# REPLY ADDENDUM
## TABLE OF CONTENTS

Page

Declaration of Patrick Fale ................................................................................ RA.1

Declaration of Geoffry Gillespie ....................................................................... RA.5

Declaration of Raymond Lamoureux................................................................. RA.8

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

PUBLIC SAFETY SPECTRUM
ALLIANCE AND PUBLIC
SAFETY BROADBAND
TECHNOLOGY ASSOCIATION,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS
COMMISSION AND
UNITED STATES OF AMERICA,

*Respondents*.

Nos. 24-1363 (lead), 24-1364, 25-1028, 25-1034

## DECLARATION OF PATRICK FALE

I, Patrick Fale, under penalty of perjury, hereby declare as follows:

1.     I am the Deputy Chief of Strategic Services for Tualatin Valley Fire & Rescue. My responsibilities include safeguarding the District's ability to deliver all-hazard emergency services to more than 500,000 people across 400 square miles through the strategic deployment of 29 fire stations and 450 firefighters, EMTs, and paramedics, ensuring continuity, resilience, and responsiveness in both daily operations and long-range initiatives, leading strategic planning and change management, overseeing critical programs and partnerships, and representing the

District across local, state, regional, and federal platforms to protect and strengthen the services our communities depend on. I have served in this role since 2023.

2. Since 2013, Tualatin Valley Fire & Rescue has relied on the nationwide public safety broadband network managed by the First Responder Network Authority (FirstNet). Tualatin Valley Fire & Rescue has used its access to the nationwide public safety broadband network to provide life-saving emergency services. FirstNet's service is critically important to fulfilling our public safety mission.

3. I understand that the Federal Communications Commission (FCC) has issued an Order that contemplates making unused portions of the 4.9 GHz band available to FirstNet to use as part of its nationwide public safety broadband network through a sharing agreement with a nationwide Band Manager to be appointed by the FCC to manage the 4.9 GHz band. Access to this spectrum will allow FirstNet to provide enhanced services, which Tualatin Valley Fire & Rescue would make use of to the extent they were available.

4. At the same time, I understand that, contrary to some of the proposals made to the agency, the FCC Order (1) did not require existing 4.9 GHz band licensees to convert geographic licenses to site-based and (2) delays determining whether to require licensees to surrender unused spectrum.

2

5.  I submit this declaration to explain how these two decisions will hinder my ability to promote public safety.

6.  Failure to convert geographic licenses into site-based licenses and to require the surrender of unused spectrum will reduce the amount of 4.9 GHz spectrum that the Band Manager could make available to FirstNet, thereby constraining FirstNet's ability to enhance the services provided on the nationwide public safety broadband network. This, in turn, will deprive Tualatin Valley Fire & Rescue of the ability to use these enhanced services.

7.  Second, the FCC's decision to delay any final decision on what to do with unused spectrum will harm Tualatin Valley Fire & Rescue by infusing uncertainty into what technologies and how much equipment Tualatin Valley Fire & Rescue should invest in, and when 4.9 GHz spectrum may be incorporated into the nationwide public safety broadband network. This action delays when Tualatin Valley Fire & Rescue can make the decision to commit to equipment that would utilize 5G on the 4.9 GHz band, which will have immediate impacts on purchasing and other decisions.

8.  Even if the FCC later decides to order licensees to relinquish unused spectrum, Tualatin Valley Fire & Rescue will still have been harmed by the delay.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 10th day of September, 2025.

Patrick Fale

PUBLIC SAFETY SPECTRUM
ALLIANCE AND PUBLIC
SAFETY BROADBAND
TECHNOLOGY ASSOCIATION,

        *Petitioners*,

    v.

FEDERAL COMMUNICATIONS
COMMISSION AND
UNITED STATES OF AMERICA,

        *Respondents*.

Nos. 24-1363 (lead), 24-1364, 25-1028, 25-1034

## DECLARATION OF GEOFFRY GILLESPIE

I, Geoffry Gillespie, under penalty of perjury, hereby declare as follows:

1.      I am an Emergency Medicine Physician, Regional Emergency Medical Organization (REMO) physician, work in the Division of Pre-Hospital Emergency Medicine, and a Tactical Medicine physician. My responsibilities include caring for patients in the busiest Trauma Center in the State, interfacing daily with Emergency Medical Services (EMS) and Fire Department agencies, providing real time EMS direction, training EMS and Law Enforcement Officers (LEO) in medical care, and working directly with LEO tactical teams (local, county, and Federal agencies), on field operations. I have served in this role since 2016.

2.     Since 2018, I have relied on the nationwide public safety broadband network managed by the First Responder Network Authority (FirstNet). I have used its access to the nationwide public safety broadband network to provide life-saving emergency services. FirstNet's service is critically important to fulfilling our public safety mission.

3.     I understand that the Federal Communications Commission (FCC) has issued an Order that contemplates making unused portions of the 4.9 GHz band available to FirstNet to use as part of its nationwide public safety broadband network through a sharing agreement with a nationwide Band Manager to be appointed by the FCC to manage the 4.9 GHz band. Access to this spectrum will allow FirstNet to provide enhanced services, which I would make use of to the extent they were available.

4.     At the same time, I understand that, contrary to some of the proposals made to the agency, the FCC Order (1) did not require existing 4.9 GHz band licensees to convert geographic licenses to site-based and (2) delays determining whether to require licensees to surrender unused spectrum.

5.     I submit this declaration to explain how these two decisions will hinder my ability to promote public safety.

6.     Failure to convert geographic licenses into site-based licenses and to require the surrender of unused spectrum will reduce the amount of 4.9 GHz

spectrum that the Band Manager could make available to FirstNet, thereby constraining FirstNet's ability to enhance the services provided on the nationwide public safety broadband network. This, in turn, will deprive me of the ability to use these enhanced services.

7. Second, the FCC's decision to delay any final decision on what to do with unused spectrum will harm I by infusing uncertainty into what technologies and how much equipment I should invest in, and when 4.9 GHz spectrum may be incorporated into the nationwide public safety broadband network. This action delays when I can make the decision to commit to equipment that would utilize 5G on the 4.9 GHz band, which will have immediate impacts on purchasing and other decisions.

8. Even if the FCC later decides to order licensees to relinquish unused spectrum, I will still have been harmed by the delay.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 10th day of September, 2025.

_____

Geoffry Gillespie MD

Associate Professor of Emergency Medicine

Albany Medical Center

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| PUBLIC SAFETY SPECTRUM ALLIANCE AND PUBLIC SAFETY BROADBAND TECHNOLOGY ASSOCIATION, <br><br> *Petitioners*, <br><br> v. <br><br> FEDERAL COMMUNICATIONS COMMISSION AND UNITED STATES OF AMERICA, <br><br> *Respondents*. | Nos. 24-1363 (lead), 24-1364, 25-1028, 25-1034 |

## DECLARATION OF RAYMOND LAMOUREUX, FIRE CHIEF

I, Raymond Lamoureux, under penalty of perjury, hereby declare as follows:

1.    I am the Fire Chief for Yakima County Fire District #4. My responsibilities include oversight of all department functions including budget, administration, operations and training. I have served in this role since 2022.

2.    Since 2024, Yakima County Fire District #4 has relied on the nationwide public safety broadband network managed by the First Responder Network Authority (FirstNet). Yakima County Fire District #4 has used its access to the nationwide public safety broadband network to provide life-saving emergency

services. FirstNet's service is critically important to fulfilling our public safety mission.

3.      I understand that the Federal Communications Commission (FCC) has issued an Order that contemplates making unused portions of the 4.9 GHz band available to FirstNet to use as part of its nationwide public safety broadband network through a sharing agreement with a nationwide Band Manager to be appointed by the FCC to manage the 4.9 GHz band. Access to this spectrum will allow FirstNet to provide enhanced services, which Yakima County Fire District #4 would make use of to the extent they were available.

4.      At the same time, I understand that, contrary to some of the proposals made to the agency, the FCC Order (1) did not require existing 4.9 GHz band licensees to convert geographic licenses to site-based and (2) delays determining whether to require licensees to surrender unused spectrum.

5.      I submit this declaration to explain how these two decisions will hinder my ability to promote public safety.

6.      Failure to convert geographic licenses into site-based licenses and to require the surrender of unused spectrum will reduce the amount of 4.9 GHz spectrum that the Band Manager could make available to FirstNet, thereby constraining FirstNet's ability to enhance the services provided on the nationwide

public safety broadband network. This, in turn, will deprive Yakima County Fire District #4 of the ability to use these enhanced services.

7.     Second, the FCC's decision to delay any final decision on what to do with unused spectrum will harm Yakima County Fire District #4 by infusing uncertainty into what technologies and how much equipment Yakima County Fire District #4 should invest in, and when 4.9 GHz spectrum may be incorporated into the nationwide public safety broadband network. This action delays when Yakima County Fire District #4 can make the decision to commit to equipment that would utilize 5G on the 4.9 GHz band, which will have immediate impacts on purchasing and other decisions.

8.     Even if the FCC later decides to order licensees to relinquish unused spectrum, Yakima County Fire District #4 will still have been harmed by the delay.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of September, 2025.


Raymond Lamoureux CFO, CTO